## THE FIRST NATIONAL BANK OF JERSEYVILLE

### v.

## JOHN H. BELT.

*Banks—Overdraft—Sale of Cattle—Title—Application of Proceeds— Agency.*

Where the proceeds of stock, shipped for the owner by a local dealer to a broker, are improperly placed to the credit of a bank for the use of such local dealer, the bank can not apply the same on a previous overdraft by him.

[Opinion filed October 3, 1888.]

APPEAL from the Circuit Court of Jersey County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. GOODRICH & FERNS, for appellant.

If Moore was so indebted to the bank, and on the 3d it credited the proceeds of the sale to his credit, or on the morning of the 4th, before they received the telegram sent by Cassidy Bros. & Co., and not having learned of Belt's claim until the next day, the bank was justified in so doing, and would, in law, be freed from any liability to appellee on his pretended claim.   The deposit in this case, under the law, was a general deposit.   Brahm v. Adkins, 77 Ill. 263.

And where money, paid into a bank, is passed generally to the credit of the owner, the bank does not hold the money as

bailee, but the relation of debtor and creditor is created, and the money may be applied by the bank to the payment of any demand it may have against the depositor. The appellee and Moore, then, on the 3d day of December, 1886, were mutually indebted to each other; and Moore could only call as a matter of right for the balance due him. Commercial Bank of Albany v. Hughes, 17 Wend. 94; Morse, Banks & B., 2d Ed. p. 48; International Bank of Chicago v. Jones, 7 West. R. 693.

Mr. JOSEPH S. CARR, for appellee.

PLEASANTS, J.  Isaac Moore kept a meat market at Jerseyville and occasionally shipped live stock.  In September, 1886, he made an arrangement with Cassidy Bros. & Co., a commission firm at East St. Louis, by which the net proceeds of all hogs shipped by him to them were to be deposited in the Fourth National Bank of St. Louis "for advice and credit of" appellant.  In the preceding spring he had sold to appellee, a farmer near Jerseyville, thirty-four head of cattle, with an agreement to re-purchase them at $4.50 per hundred weight if they should do well on the grass.  By a later arrangement he took, during the summer and fall, by two or three at a time as he needed to supply his meat market, seventeen of the number, paying for them on account from time to time as he could.  When winter came on and they required to be fed, appellee pressed him to take the rest and close up the matter.  But cattle had fallen and he claimed to be unable to pay for them.  It was thereupon agreed that the price to him should be reduced to $4.30 ; that he should ship them to his commission men in the name of appellee, " so that the net proceeds would come straight to him," and that he, Moore, would bear the anticipated loss.  Accordingly on the night of December 2d, he did ship to them, by the Alton road, the remaining seventeen head, the shipping contract being signed " John H. Belt, shipper, per I. Moore."  On the third he telegraphed them, in the name of appellee, to "give hog market and if cattle sold, give net proceeds," with which they complied by answer on the 4th, addressed to "John H. Belt, Jerseyville, Ill.," stating that "the cattle sold net $487.47."

It appears, however, that notwithstanding the notice so given they deposited these proceeds to the credit of appellant for the use of Moore, and so advised it on the 3d. They also sent the account of sales to Moore, which he received on the evening of the same day, and thereupon immediately telegraphed them that "the cattle were Belt's," of which they advised appellant by ten o'clock A. M. of the 4th. On that day also appellee called at the bank and asked the teller "if they didn't have $487.47 there from his cattle," to which the answer was that "there was just that amount that came from cattle Moore shipped to Cassidy Bros. & Co., but he would have to see the president about it." Appellee then tried to see the president but did not succeed until the 7th, when he demanded the money, which was refused on the ground that Moore, who was indebted to the bank by overdraft, had already been credited with it.

Thereupon this action was brought for money had and received, and plaintiff obtained a verdict for the amount stated with interest, on which the court, after overruling a motion for a new trial, rendered judgment.

It is claimed that to be entitled to recover, appellee was bound to prove that the title to these cattle, when they were sold on the market, was in him, and that the bank had notice of his interest when it credited the proceeds to the account of its debtor. All the objections urged to the rulings of the court below rest on this idea of the law; and then it is insisted that the evidence failed to show it had such notice or he such title.

We think the question is, to whom did the money rightfully belong when this suit was brought? Who owned the cattle is immaterial, unless it throws light upon that question. He would not necessarily own the proceeds, for he might effectually appropriate them to another in anticipation of their receipt. In this case, if Moore re-acquired the title from Belt and did not part with it until the sale was made by Cassidy Bros. & Co., he clearly appropriated the proceeds to Belt, and with his concurrence, in part payment for them. To this there was no legal hinderance; nobody else had acquired any

right in or lien upon the cattle or the proceeds as against him, and the notice to the agents who received them was sufficient to protect the rights of Belt.

The only other view from the evidence, upon the supposition that Moore owned the cattle, is that he invested Belt with the title when he delivered them to the carrier.   This, also, he was free and competent to do; and that he understood he did it, is manifest from his signature to the shipping contract and his telegrams to the consignees.

In either, it is clear that the deposit to the credit of appellant for the use of Moore, was an error on the part of Cassidy Bros. & Co.   This money was not within the arrangement of September.   It was not the proceeds of hogs, nor of anything shipped by Moore or for his account, but of cattle shipped by Belt, or for his account.   It should therefore have been deposited to his credit.   But appellant received notice of this error almost as soon as of the deposit—while it was in possession of the money without any right acquired or liability incurred in respect of it which could justify the withholding of it from the rightful owner.   The entry on its books to the credit of Moore's overdrawn account amounted to nothing. It does not appear that it had settled with Moore on that basis.   And if it did, it would have been a settlement in error, which would bind nobody—certainly not Belt, who was in no way responsible for it.   Moore himself could not ratify it and it required no voucher from him for its correction.

We see no error in this record, and think the judgment was plainly right.                     *Judgment affirmed.*