G. G. CLEMMER *et al.*

*v.*

THE DROVERS' NATIONAL BANK.

*Filed at Ottawa June 5, 1895—Rehearing denied October 16, 1895.*

1. BANKS—*cannot apply money deposit of principal on debt of factor.* A bank cannot apply, in payment of its demands against a factor, moneys deposited with it by the latter in his own name, which it knows, or from the course of dealing with him is bound to know, were the proceeds of sales of stock consigned to him for sale, although it does not know who the consignors are.

2. EVIDENCE—*presumption as to fund from which check was paid.* It will be presumed, in an action to impress money deposited in a bank by a factor, in his own name, with a trust for the benefit of a consignor of live stock, that a check drawn by such factor, after such deposit, was paid out of his own funds rather than the funds of the consignor.

3. APPEALS AND ERRORS—*effect, on appeal, of submitting to equitable jurisdiction.* A bank cannot, upon appeal from a decree adjudging it to be a trustee for plaintiffs as to certain deposits, object that equity is not a proper remedy, where it answered to the merits and invoked the equitable jurisdiction of the court, and itself obtained relief in the suit as on cross-bill.

*Drovers' Nat. Bank* v. *Clemmer*, 57 Ill. App. 107, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Appellant Clemmer filed his bill in equity in the circuit court of Cook county, against appellee, and Hanna, Son & Co., making the other appellants defendants also, wherein he alleged that on June 8, 1890, he owned a car load of cattle and a car load of hogs, which on that day he shipped from Iowa to Hanna, Son & Co., commission merchants at the Union Stock Yards, Chicago, to be sold for him on commission, the proceeds, after deducting commissions and expenses, to be placed to the credit of the Citizens' Bank of Hampton, Iowa, in the Merchants'

National Bank of Chicago ; that on June 9, 1890, the stock was received by said commission firm and sold by them; that the proceeds, after deducting expenses and commissions, amounted to $1311.87, and were the property of Clemmer, and were held in trust for him by said commission firm; that it was the duty of said commission firm to keep the money separate from all other moneys, and to remit the same to Clemmer, or place it in the Merchants' National Bank to the credit of the Citizens' Bank of Hampton, Iowa; that without Clemmer's knowledge, and without any authority from him, but not with fraudulent intent, said commission firm placed all of said moneys to its own account and credit in the Drovers' National Bank, which bank had been the bank through which the said commission firm transacted all its banking business, and that said commission firm placed said money, together with all other trust moneys which it had of the proceeds of sales of stock of other shippers, in said Drovers' National Bank at or about the close of business on the 9th day of June, 1890; that immediately thereafter, on the 10th day of June, the said bank wrongfully, and without authority, knowledge or consent of complainant (Clemmer) or Hanna, Son & Co., diverted all of said money and appropriated the same, claiming to have applied said money as a partial payment on a note which said bank claimed to hold against said Hanna, Son & Co. and other parties to Clemmer unknown ; that said bank has ever since retained, and now wrongfully retains, said money, and claims to hold it as a payment on the said note; that at the time said bank received the money from said commission firm and appropriated it, it had notice that said money was not the money of Hanna, Son & Co., but that the same was the proceeds of stock sold by them as commission merchants, and held by said commission firm in trust, only, for the owners and shippers of said stock, and knew that it had no right to apply the same on any indebtedness of the said commission firm, and had notice that the money

was the property of Clemmer, and was held in trust only for him by said firm; that the said firm of Hanna, Son & Co., and each member, at the time of the deposit, and for many months prior thereto, were, and are now, wholly insolvent, and nothing can be recovered from said firm by any legal proceeding; that such insolvency was unknown to complainant until after the said deposit and appropriation of such money; that the bank knew of such insolvency at the time it appropriated said money, and had known the same for many months prior thereto; that said bank advised and procured said commission firm to continue in the commission business, and to hold itself out to the public as solvent, and withheld from the public all knowledge of their indebtedness and insolvency, and furnished said commission firm all of its banking facilities, paid its checks and sight drafts, and induced the public belief that said firm was solvent, etc.; that said bank and firm established, ostensibly for convenience, a custom in their dealings relative to proceeds of sale, whereby said commission firm deposited in said bank all of the proceeds of commission sales by them made, and said bank first placed all of said proceeds, notwithstanding their being trust funds, to the account of said firm, and then afterward distributed the same to the credit of the parties to whom they in fact belonged; that said course of dealing was followed for a long time next prior to said deposit; that said bank at all times induced said firm to think that it would not in any manner interfere with said trust funds, nor attempt to divert the same to the payment of its private debt; that all of said acts of said bank were done by it fraudulently, intending to come into possession of trust funds, and fraudulently intending to divert and appropriate the same to the payment of its debt, and in pursuance of such purpose and intent to fraudulently divert and appropriate complainant's money as aforesaid; that complainant had no knowledge of the course of dealing between said parties, their busi-

ness relations, said indebtedness, nor of the intention or
purpose of said bank, and that if he had known of such
insolvency, indebtedness or course of dealing he would
not have consigned his stock to said commission firm, nor
permitted said firm to come into possession of the pro-
ceeds thereof; that immediately after said diversion and
appropriation of said money by said bank, complainant
notified said bank of his ownership of said money, and
demanded the same of said bank; that said commission
firm also notified said bank forthwith of said ownership
of complainant of said money, and demanded that the
same be delivered to complainant, but said bank refused,
and still refuses, to deliver said money, or any part
thereof, to complainant; that on or about the time of the
deposit, as aforesaid, said firm also deposited in said
bank, as complainant is informed, certain moneys of one
John Bower, in the sum of $1104.31, and of the moneys of
John Jones $1094.11, and of the moneys of J. A. Felthous,
J. C. Felthous and A. A. Moore, co-partners, etc., $1348.75,
all of whom are made defendants to this bill; that all of
said moneys were then and there wrongfully and without
authority placed to the credit of said commission firm in
their account, and were then and there, together with
complainant's moneys, commingled, without the knowl-
edge or consent of any of the owners thereof; that of the
moneys of complainant and John Jones, John Bower and
Felthous Bros. & Co., there remained in the hands of said
bank on the morning of June 10, 1890, the sum of $3475,
and no part of said money belonged to said commission
firm, nor any member thereof, but all belonged to said
complainant and Jones, Bower and Felthous Bros. & Co.,
and to no other person or persons whatever, and said
commission firm and said bank held all of said money in
trust for complainant and said Jones, Bower and Felt-
hous Bros. & Co.; that said bank wrongfully and without
authority diverted and appropriated to its own use, and
applied on the indebtedness of said commission firm,

157—14

\$3475, and has ever since claimed to own said money, and refuses to pay any part thereof to the owners thereof; that to avoid litigation, dispute or question among themselves as to their respective rights to the trust fund and to the proportionate amount due them, this complainant, Bower, Jones and Felthous Bros. & Co. have mutually agreed to abide by a *pro rata* distribution of said fund, and that upon such basis there is due complainant from said bank \$938.25, with interest; prays that the defendant bank be decreed and adjudged to be a trustee, holding said moneys in trust for the benefit of complainant, and be decreed to pay and deliver said moneys to complainant, with interest from June 10, 1890, and that complainant have judgment against said bank for the said sum of \$938.25, together with said interest, and that complainant have judgment against the said commission firm for the balance due him over and above the amount adjudged to be in the hands of the said bank, such balance being the sum of \$374, and that the distribution of said trust fund, as agreed upon between complainant and said defendants Bower, Jones and Felthous Bros. & Co., be adjudged and decreed and made binding on all parties, together with a prayer for general relief.

The other appellants answered, admitting Clemmer's bill, and filed cross-bills claiming their *pro rata* share of the fund.

Appellee demurred to the bill on the ground that it was exhibited against appellee and other defendants for distinct matters and causes in which appellee had no interest, and for multifariousness. The demurrer was overruled, and appellee answered to the merits. After the issues were made, appellee, by leave of court, filed an amendment to its answer, which it asked to have treated and considered as a cross-bill, asking for affirmative relief, in this, that Hess Bros. claimed to have a demand against appellee on account of said fund, and as the holders of a certain check drawn in their favor by Hanna,

Son & Co. on appellee for $3300; that Hess Bros. had, since the filing of the bill, brought a suit at law against appellee, which was then pending; prayed that they be made parties and required to litigate their said demand in this cause, and that they be perpetually enjoined from prosecuting said suit at law or any suit against appellee for said demand.

The hearing of the cause was postponed and Hess Bros. were made parties as prayed, and on being summoned, answered and filed their cross-bill, claiming payment of said check out of said fund.   Appellee demurred to said cross-bill, which demurrer the court sustained. The cause was heard and final decree rendered, finding that the material allegations in the bill and cross-bills of appellants were true, and that appellants were entitled to the fund as alleged; that Hess Bros. had no claim against appellee on account of said check, and they were perpetually enjoined from prosecuting said suit, or any suit on said alleged claim, against appellee.   On appeal by the bank the Appellate Court reversed the decree and adjudged that the bill be dismissed, and appellants now prosecute this appeal to reverse the judgment of the Appellate Court.

LLOYD G. KIRKLAND, and W. D. EVANS, for appellants:

If a trustee wrongfully deposit in bank to his own credit, in the same account, moneys of distinct trusts, equity will not permit the trust to be thereby defeated, but will award to each *cestui que trust,* out of the account, the amount of his moneys so deposited.   If the trustee deposit his own money in the same account, and checks out, he will be deemed to first check out his own moneys, and not those of the trust. *Bank* v. *Goetz,* 138 Ill. 127; *Thompson's Appeal,* 22 Pa. St. 16; *Bank* v. *King,* 57 id. 202; *Knatchbull* v. *Hallett,* 13 Ch. Div. 696; *Bank* v. *Insurance Co.* 104 U. S. 54; *Bank* v. *Gillespie,* 137 id. 411.

The bank had no lien or right of set-off at all against this deposit, even though it had not been impressed with a trust.   *Bank* v. *Jones*, 119 Ill. 410.

Where a bank appropriates to the payment of a private debt of the depositor to itself, moneys deposited with it by the depositor, which the bank knows, or has good reason to know, are held by the depositor in a fiduciary capacity, a court of equity will compel it to pay to the beneficial owner.   *Bank* v. *Village of Hyde Park*, 101 Ill. 595; *Bank* v. *Insurance Co.* 104 U. S. 54; *Bank* v. *Gillespie,* 137 id. 411; *Jandon* v. *Bank,* 8 Blatchf. 430.

GEORGE P. MERRICK, for appellee:

This court is fully committed to the rule that money mixed with other money loses its identity and can not be followed.    *Trustees* v. *Kirwin*, 25 Ill. 73; *Bank* v. *Goetz*, 138 id. 127; *Wetherell* v. *O'Brien*, 140 id. 146; *Mutual Accident Ass.* v. *Jacobs*, 141 id. 261; *Svanoe* v. *Jurgens*, 144 id. 507.

"The right lieth not for money out of a bag or chest, and so of corn out of a sack, and the like.    These can not be known from others."  (Coke's Litt. 286 b.)   This is the doctrine of the text books.    2 Perry on Trusts, sec. 828; 2 Story's Eq. Jur. 1258.

A court will go as far as it can in tracing and following trust money, but when, as a matter of fact, it can not be traced, the equitable right of the *cestui que trust* to follow it fails.    *Little* v. *Chadwick*, 151 Mass. 109.

A creditor who seeks to reach the equitable estate of his debtor which can not be reached by law, must first recover judgment at law and have execution returned unsatisfied, to give jurisdiction to equity.    *Miller* v. *Davison*, 3 Gilm. 518; *Ishmael* v. *Parker*, 13 Ill. 324; *Bigelow* v. *Andress*, 31 id. 322; *McConnell* v. *Dickson*, 43 id. 99; *Dewey* v. *Eckert*, 62 id. 218; *Scripps* v. *King*, 103 id. 469; *Railroad Co.* v. *Town of St. Anne*, 101 id. 151; *Dormueil* v. *Ward*, 108 id. 216.

Money delivered to pay debts due to third persons from the person delivering, and converted to his own use by the person receiving, does not create a trust.    *Wetherell* v. *O'Brien*, 41 Ill. App. 143; *Doyle* v. *Murphy*, 22 Ill. 502; *Taylor* v. *Turner*, 87 id. 296; *Steele* v. *Clark*, 77 id. 471; *Wilson* v. *Kirby*, 88 id. 566.

Mr. JUSTICE CARTER delivered the opinion of the court:

Hanna, Son & Co. were factors, engaged in selling live stock on commission at Chicago, and transacted their banking business with appellee. Appellants were shippers of stock, having no business relations with each other, but each shipping separately on his own account from Iowa. On June 9, 1890, Hanna, Son & Co. received and sold for the several appellants certain lots of live stock at the Union Stock Yards. For each lot sold the factors received from the purchaser a ticket, which stated the kind of stock, the weight, price, the total amount to be paid, and that it was for deposit in appellee's bank, but did not state who the consignor was. According to the custom of business between appellee and Hanna, Son & Co., the clerk of the former called for and obtained from the latter these tickets, collected the money and deposited it to the credit of Hanna, Son & Co. When sales were made, the proceeds, except a certain amount allowed for commissions and expenses, belonged to the owners of the stock, and it was the duty of Hanna, Son & Co. to pay over the same to them or on their order, or, as to some of the appellants, to deposit in other designated banks, as directed. The aggregate amount appellants should have received was $4859. A few hundred dollars of this was for one lot sold on June 7. Appellee knew this money was the proceeds of sales of stock consigned for sale on commission, but did not know who the consignors were. Hanna, Son & Co. had been transacting business in this way with appellee for several years, but appellants had no knowledge of their business relations. The total de-

posits of Hanna, Son & Co, made with appellee on June 9 amounted to $12,379.21, but they checked out on the same day all but $3475, and on the morning of June 10 appellee applied this balance on an over-due note of Hanna, Son & Co., and it is this balance, which the circuit court decreed that appellee should pay to appellants *pro rata*, according to their respective demands, over which this controversy arises.    John S. and William P. Hanna constituted the firm, and as such firm, or as members of another firm, had been in the same business for many years.    As members of another firm they had become liable, as sureties of one Clark, to appellee, for upwards of $12,000, and later, with one Sinclair, gave their note to appellee for $7135.86 of this indebtedness, which note, by successive renewals, appellee carried several years, and until it applied the above mentioned balance of $3475, standing to the credit of Hanna, Son & Co., towards its payment on June 10, 1890.    We think the evidence fairly shows that Hanna, Son & Co. had been for several years, and were at the time of the application of said balance by the bank, unable financially to pay this indebtedness, and that appellee well knew their financial condition.    They failed in business June 10, 1890, and have since remained wholly insolvent.    Upon receiving notice from the bank, on June 10, that it had applied this balance on the note, Hanna, Son & Co. protested against any such application, and stated to appellee that the money did not belong to them, but belonged to their consignors.    They also notified appellants, who soon thereafter severally came and demanded from the bank payment to them as the real owners of the fund.

Appellee contends that the relation of trustee and *cestui que trust* did not exist between the consignees and the consignors, but the relation of debtor and creditor only, and that when the moneys in question were deposited the bank became simply a debtor therefor to the depositors, and had the right, in accordance with a previous

agreement attached to the note in question, to apply such deposits toward the payment of the note. The theory of appellee on appeal, and the one on which the Appellate Court seems to have reversed the decree, was and is, that whether the proceeds of these sales were, or were not, a trust fund, still, when they were deposited in the bank with other moneys of Hanna, Son & Co., and mixed with a mass of other money in the bank, they lost their identity and could not be followed as a trust fund; that "the right to follow a trust fund ceases when the means of ascer- tainment and identification fail, as where the subject matter is turned into money and mixed and compounded in a general mass of property of the same description." And the contention of appellee now is, that whatever remedy appellants may have, it is not by bill in equity to fasten a trust upon this balance in appellee's bank and compel its distribution to appellants according to their respective interests, and it is insisted that this contention and the judgment of the Appellate Court are in strict conformity to the previous decisions of this court, as announced in the following cases:  *School Trus- tees* v. *Kirwin*, 25 Ill. 62, *Union Nat. Bank* v. *Goetz*, 138 id. 127, *Wetherell* v. *O'Brien*, 140 id. 146, *Mutual Accident Ass.* v. *Jacobs*, 141 id. 261, *Svanoe* v. *Jurgens*, 144 id. 507, and *Doyle* v. *Murphy*, 22 id. 502. On the other hand, it is insisted by appellants that the precise question here involved was not presented by the cases cited, nor by any case hereto- fore decided by this court adversely to appellants' con- tentions.

It is said that in *School Trustees* v. *Kirwin, supra,* much relied on by appellee, it did not appear that there was any balance or fund in the bank standing to the credit of French, the depositor, upon which a trust could have been impressed in favor of the trustees of schools, and that in all the cases cited the rights of creditors were involved, and as presented the question was not, as in the case at bar, whether there was a general liability of the bank, or

receiver of the fund or property, to the complainant, but whether the complainant was entitled to a preference over other creditors. Appellants cite, among other cases, *Union Stock Yards* v. *Gillespie,* 137 U. S. 411, where a bill based upon facts very similar to those here involved was sustained by the Supreme Court of the United States.

We are, however, clearly of the opinion that the decree of the circuit court should be sustained upon other grounds, and that it does not become necessary to determine whether or not appellants have pursued precisely the proper remedy to recover the moneys justly belonging to them. It is well settled that a factor has no right to pledge, deposit or apply the property of his principal to secure or pay his own debt. (*First Nat. Bank* v. *Schween,* 127 Ill. 573; 3 Am. & Eng. Ency. of Law, 345.) Appellee knew that the moneys collected and deposited by it on the tickets received from Hanna, Son & Co. were the proceeds of the sales of stock consigned to them for sale on commission, and was bound to know it had no right to apply these moneys in payment of its own demands against the commission merchants.

As to the contention that it cannot be known that this balance applied by appellee on the note was the moneys of appellants, and that all of appellants' moneys may have been drawn out by Hanna, Son & Co. and embraced in the $9000 checked out on the 9th of June, it is sufficient to say that it must be presumed that they checked out their own moneys to others, rather than the moneys of appellants. *Knatchbull* v. *Hallett,* (*In re Hallett's Estate,*) 13 Ch. Div. 696.

We think it clear, from the evidence, that this balance really belonged to appellants, and that they had the right to recover it in some appropriate action cannot well be doubted. And if it should be conceded that, in following previous decisions of this court, technically appellants' bills could not be maintained on such a state of facts, but that their remedy lay in some other form of action, yet appellee is in no position to take advantage of the error.

When its demurrer to the bill was overruled, appellee not only answered to the merits, claiming the right to apply the fund in question towards the payment of its own demands against Hanna, Son & Co., and denying that appellants had any right to or interest in the fund, but the answer contained no allegation that there was an adequate remedy at law, nor any other allegation distinctly challenging the equitable jurisdiction of the court. More than this: Appellee itself invoked the equitable jurisdiction of the court, and upon its own motion, by an amendment filed to its answer, which it asked to be treated as a cross-bill, compelled the complainant to amend his bill and make Hess Bros. parties thereto, and to continue the case that these new parties might be summoned in. Hess Bros. had, since the filing of the bill, brought a suit at law against appellee, based upon a check drawn upon the bank by Hanna, Son & Co. for $3300, whereby they claimed that much of the fund in controversy. Upon this amended answer, treated as a cross-bill, appellee obtained, in the decree on final hearing, (whether erroneously or not it is not necessary in this case to consider,) affirmative relief, by having it adjudged that Hess Bros. had no claim against it, and that they be perpetually enjoined from prosecuting said suit or any other against appellee on account of said matter. On such a record it would be highly inequitable to allow appellee to deny, on appeal, that equitable jurisdiction which it had itself invoked in its own behalf, and by which it had obtained relief. It has been said by courts of high authority that there is no adequate remedy at law in such a case. (*National Bank* v. *Insurance Co.* 104 U. S. 54; *Union Stock Yards* v. *Gillespie*, 137 id. 411.) But whether there is or not, if appellee desired to avail itself of such an objection on the hearing, in a case not wholly foreign to the jurisdiction of a court of equity, it should have set it up in its answer, and should not itself have invoked the same equitable jurisdiction in its own behalf which

it now seeks to have denied to appellants. If any valid objection might have been raised, by demurrer or answer, to the granting of the equitable relief on the bills and cross-bills of appellants, as prayed, it has been waived by appellee, and cannot be availed of on appeal. *Stout* v. *Cook,* 41 Ill. 447; *Magee* v. *Magee,* 51 id. 500; *Kimball* v. *Walker,* 30 id. 482; *Ohling* v. *Luitjens,* 32 id. 23; *Colton* v. *Hanchett,* 13 id. 615; *Comstock* v. *Henneberry,* 66 id. 212; *Gridley* v. *Watson,* 53 id. 186; *Dodge* v. *Wright,* 48 id. 382; *Hickey* v. *Forristal,* 49 id. 255; *Knox County* v. *Davis,* 63 id. 405; *Gage* v. *Griffin,* 103 id. 41; *Richards* v. *Lake Shore and Michigan Southern Railway Co.* 124 id. 516; *Ryan* v. *Duncan,* 88 id. 144; *Gordon* v. *Reynolds,* 114 id. 118; *Brill* v. *Stiles,* 35 id. 305; *Snowdon* v. *Tyler,* 21 Neb. 199; 108 N. Y. 504; *Niles* v. *Williams,* 24 Conn. 279; *Edgett* v. *Douglass,* 22 Atl. Rep. (Pa.) 868; 1 Beach on Mod. Eq. Prac. sec. 13.

Substantial justice is done by the decree of the circuit court, and we see no sufficient reason, on the record as it stands, for reversing it and remitting the parties to some other remedy by which the same ends might possibly be reached but no more just results attained.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*