JOHN S. HANNA *et al.*

*v.*

THE DROVERS' NATIONAL BANK.

*Opinion filed December 18, 1901—Rehearing denied February 5, 1902.*

1. TRIAL—*when rulings of court are not necessarily inconsistent.* A ruling admitting in evidence a chancery decree set up in a notice of special defense filed with the general issue is not necessarily inconsistent with a previous ruling sustaining a demurrer to a special plea setting up the same decree, where there is nothing in the record to show upon what ground the demurrer was sustained.

2. EVIDENCE—*when decree in chancery suit is properly admitted.* In an action by a depositor against a bank for refusing payment of plaintiff's checks, thereby destroying the credit of the plaintiff as a trader, it is competent to admit in evidence a decree in a chancery proceeding against the bank and the plaintiff as defendants, whereby the ownership of the fund on deposit at the time the checks were drawn was determined to be in third parties, who were consignors of stock shipped to the plaintiff and sold by him.

3. ACTIONS AND DEFENSES—*elements necessary to sustain an action against bank for slandering a depositor's credit by refusing to pay checks.* To sustain a suit by a depositor against a bank, in the nature of an action for slandering the credit of the plaintiff as a trader by refusing to pay his checks, it must be shown that at the time the checks were presented the plaintiff had on deposit sufficient funds belonging to him, unencumbered, out of which the checks should have been paid, and that the bank, by mistake or other inexcusable conduct, refused to honor and pay the same.

4. BANKS—*a banker having notice that deposit is a trust fund may refuse to honor checks.* Ordinarily it is the duty of a banker to pay money on deposit with him to the party in whose name it is deposited; but if he has notice of the fact that the fund belongs to another, he may refuse to honor the checks of the depositor and be compelled to pay it to the real owner.

5. RES JUDICATA—*when decree operates as an estoppel in subsequent suit at law.* If a bank refuses to honor a depositor's checks and at-

tempts to apply the deposit on a note held by it against the depositor, but in a chancery proceeding by third parties against the bank and the depositor it is determined by the decree that the fund was a trust fund belonging to the complainants, that the bank had notice of such fact and that the complainants were entitled to the fund, the decree is a defense to a subsequent suit by the depositor against the bank for slandering his credit as a trader by refusing to honor the checks.

*Hanna* v. *Drovers' Nat. Bank,* 92 Ill. App. 611, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

LLOYD G. KIRKLAND, and J. S. HUEY, for appellants.

GEORGE P. MERRICK, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

Appellants sued appellee in the superior court of Cook county in an action on the case. Upon the trial the court directed the jury to find for the defendant, and upon a verdict in obedience to that instruction entered judgment against the plaintiffs for costs. The plaintiffs appealed to the Appellate Court for the First District, where the judgment of the superior court was affirmed. To reverse the latter judgment this appeal is prosecuted.

The declaration consisted of four counts, setting out that defendant was on June 10, 1890, engaged in the general banking business in Chicago, and that plaintiffs were on that date, and prior thereto, depositors in its bank, and on that date had on deposit in said bank an ample amount to meet all checks theretofore drawn by them on said bank; that plaintiffs were on that date engaged in the live stock commission business at the Union Stock Yards, Chicago, and received live stock by the car-loads to sell on commission, and were, as such firm, of good name, credit, reputation and business standing. It was

set out in the three first counts, severally, that on June 7, 1890, plaintiffs drew a check in favor of Hess Bros. for $3300; on the same day one in favor of Rittenhouse & Embree for $32.32; another on June 9, 1890, in favor of Philo A. Otis for $40, which checks were duly presented to defendant by said parties for payment on or about said dates and payment refused in each case, although plaintiffs' balance on deposit was then ample to pay such checks.    The fourth count set out that plaintiffs were on said June 10 indebted to certain consignors of stock on consignments shipped to plaintiffs for sale, and that plaintiffs' said deposit in defendant's bank included proceeds of such sales of stock and held in trust for such consignors, which facts were known to defendant; that plaintiffs' firm on that date had in bank sufficient to pay said indebtedness, and demanded of said bank the balance to their credit to pay said indebtedness to said consignors, and that defendant refused to honor said demand, and thereby caused plaintiffs' said firm to be reputed unworthy of credit among their customers, and by reason of defendant's said wrongful acts plaintiffs' said business was wholly lost and destroyed.

The defendant filed the general issue and three special pleas of former adjudication. The substance of these pleas was, that in a certain cause in the circuit court of Cook county, wherein one Clemmer and others, consignors of the stock to Hanna, Son & Co., were plaintiffs, and plaintiffs and defendant in this action were defendants, a final decree was entered July 16, 1894, finding that the moneys on deposit in defendant's bank to the credit of Hanna, Son & Co. on June 10, 1890, were the proceeds of sales of stock shipped to Hanna, Son & Co. by said consignors for sale, and in equity belonged to said consignors, and that the bank had knowledge of that fact, and decreeing that said bank pay said moneys to said consignors, and that the application of said moneys to the payment of the note, held by the bank, of John S. Hanna,

William P. Hanna and S. W. Sinclair was unlawful and unauthorized. The decree set up in these several pleas is the same decree which was before this court for review in *Clemmer* v. *Drovers' Nat. Bank*, 157 Ill. 206.

To the plea of not guilty plaintiffs filed a *similiter* and replied to the several special pleas, but afterwards withdrew the replication and filed a demurrer to those pleas, which was sustained by the court. The defendant then filed a plea of the Statute of Limitations, and notice of defense under the general issue, in which notice it set up the same decree described in the special pleas. To the plea of the Statute of Limitations a demurrer was sustained. The issues, therefore, upon which the trial was had were formed by a plea of the general issue and the special matters of defense set up in the notice.

It was proved upon the trial that checks were drawn upon the defendant as set forth in the first three counts of the declaration, and payments thereof refused, each being endorsed "no funds." It also appears from the evidence that the balance in the bank to the credit of plaintiffs at the time the three several checks were drawn amounted to the sum of $3474.71, or $102.39 more than the aggregate amount of those checks; but the money was not, in fact, theirs, but belonged to G. G. Clemmer and others, complainant and cross-complainants in the chancery proceeding which resulted in the decree set up in the notice filed by the defendant with the general issue herein. About the time the three checks were drawn the defendant bank attempted to apply said balance of $3474.71 upon an over-due note which it held against the plaintiffs and one S. W. Sinclair, and on June 10, 1890, notified Hanna, Son & Co. of that fact. Thereupon, William P. Hanna, a member of the firm, went to the bank and insisted that the money should not be so applied, but the cashier of the bank refused to yield the point. As a witness Hanna testified that he then demanded the money, and told the cashier, in substance, that it be-

longed to their shippers. He also testified that after
that conversation "I went back to the office and had a
conversation with my father. Then we telegraphed our
shippers, whose proceeds were held by the bank. The
next morning after I telegraphed, a number of the ship-
pers, Mr. Clemmer and Mr. Felthouse, came in. They
went over to the bank, I believe, and demanded their
money. I saw them. Suit was commenced against the
bank by Clemmer, I think." It is conceded that the re-
sult of the telegrams to Clemmer and others was the
bringing of the chancery suit, reported in 157 Ill. 206.
That was a suit against both the bank and these plain-
tiffs, in which the latter maintained, and assisted in prov-
ing, that the money ($3474.71) was the money of the
complainants and cross-complainants in that litigation.
It was not claimed in that suit, nor is it in this, that
either Hess Bros., Rittenhouse & Embree or Otis had or
claimed any interest in or right to said balance, as con-
signors of Hanna, Son & Co.

It seems to be conceded that if the trial court prop-
erly admitted the decree set up in the notice, in evidence,
and if upon that decree, together with all the other evi-
dence in the case, plaintiffs had no cause of action, there
was no reversible error in the direction of the judge to
find the issues for the defendant. It is claimed the rul-
ings of the trial court in admitting the decree in evidence
were inconsistent with its judgment sustaining the de-
murrer to the special pleas. Not necessarily so, there
being nothing here to show upon what ground the de-
murrer was sustained. But even if it were true that
the rulings were inconsistent, it would not follow that
it was error to admit proof of the decree. We think it
perfectly clear that it was competent, and counsel have
cited no authority nor assigned any sufficient reason to
the contrary.

This suit is in the nature of an action for slandering
the credit of the plaintiffs as traders, and in order to

maintain it they were required to prove that at the time the checks mentioned in the three first counts of the declaration were drawn and presented they had on deposit funds belonging to them, unencumbered, out of which the checks should have been paid, and that the bank, by mistake or some other inexcusable conduct, refused to honor and pay the same,—the theory upon which the right of action is based being, that such conduct on the part of the bank would be calculated to bring into disrepute the credit and business reputation of the plaintiffs as traders. No part of the fund in the bank upon which the checks were drawn belonged to plaintiffs. By their conduct in notifying the Iowa shippers to come on and claim the money which they admitted belonged to them, they refuted all right in themselves to draw checks upon that fund in favor of other creditors. Had the bank, with knowledge of the fact that the money belonged to Clemmer and others, paid it upon the checks drawn to Hess Bros. and others, it would have thereby aided and abetted the plaintiffs in perpetrating a fraud upon those parties, and whether it could have protected itself against liability for paying the money a second time or not is a matter of no consequence in this action.

It may be conceded that, as a general rule, it is the duty of a banker to pay money on deposit with it to the party in whose name it is deposited; but where it has notice of the fact that the fund belongs to another, it may refuse to pay it to the depositor and be compelled to pay it to the real owner. That is settled by our decision in the chancery suit, *supra*. It was found in that decree (which finding was affirmed by this court) that all the material allegations of the bill and cross-bills were proved; that the moneys there in question were trust funds and the property of the complainants in that litigation; that the bank knew that fact; that the shippers were entitled to recover from the bank the total amount of said moneys deposited in the name of plaintiffs, with

interest thereon. The findings and decree in that suit are conclusive in this as to every material fact there found. "Whether the adjudication relied on as an estoppel goes to a single question or all the questions involved in a cause, the fundamental principle upon which it is allowed in either case is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication." (*Hanna* v. *Read*, 102 Ill. 596, and authorities on p. 603.) If, at the time the bank refused to honor the checks and refused to pay over the balance on deposit to the plaintiffs, it had placed its refusal upon the ground that the money belonged to Clemmer and others and that it was its legal duty to pay it to them, there could have been no possible grounds for the present action, because the decree in the court of chancery not only found that the money did belong to those creditors, but compelled the defendant bank to pay it to them.

We are clearly of the opinion that the fourth count presents no valid cause of action in any view of the case. In the first place, as we have seen, the plaintiffs had no right to the money. Secondly, how this action can be maintained for a refusal to pay over the money on deposit upon a mere parol demand by the depositor we are unable to perceive. The plaintiffs, it is true, might, by such refusal, sustain loss and be greatly embarrassed, but there would be no slander of their credit,—no publication of their drawing checks to customers when they had no funds on deposit, which is the gist of the action for a refusal to pay checks.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*