Live Stock Exchange, Inc., Appellant, v. State Bank
of Roseville et al., Appellees.

Gen. No. 7,900.

Opin-
ion filed May 11, 1928.

CHARLES E. LAUDER and FREDERICK H. LAUDER, for appellants.

SAFFORD & SOULE, for appellees.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellant filed a bill in the circuit court of Warren county against appellees, one Cain Owens and one Max Montgomery, charging among other things that on August 1, 1923, one Blaine H. Watson was contemplating the purchase of certain cattle through appellant; that appellant, being ignorant of the financial standing, etc., of Watson applied to appellee bank for information in reference thereto; that the cashier of said bank, with knowledge that Watson was hopelessly insolvent, etc., on said date wrote appellant the following letter:

"Mr. Blaine H. Watson of near this place has been a satisfactory customer of ours for a number of years. We have always found him very prompt in meeting his obligations and we understand he has been very successful as a Cattle Feeder. Mr. Watson is reliable, honest, and industrious and we believe any transaction you may have with him will prove satisfactory."

The bill further charges that, relying on the information contained in said letter, appellant sold to Watson 64 head of cows with 64 calves, for a consideration of $4,001.80, taking therefor Watson's note, secured by a chattel mortgage on said stock; that on August 20, 1924, Watson, without the knowledge or consent of appellant, shipped certain of said cattle to the stock yards at Chicago, where they were sold and the net proceeds amounting to $4,407.64 were transmitted to appellee bank and credited to Watson's account; that at said time Watson was indebted to appellee in excess of the amount of said deposit; that appellee upon receipt of said deposit, with knowledge that such funds were derived from the sale of cattle on which appellant claimed a lien by virtue of said chattel mortgage applied the same in payment of an overdraft of Watson's in appellee bank; that at the time of the deposit of said funds, Watson had given a check to defendant Owens for $700, and a check to defendant Montgomery for $1,182.20, which said checks were afterwards presented and paid by said bank out of the funds so deposited. Said bill further averred that appellee bank received said fund with knowledge of its source, and charged that, in equity, the same belonged to appellant.

Appellee bank in its answer specifically denied that the above-mentioned letter was the letter of the bank, or that the bank as such had knowledge thereof. Said answer admitted the receipt of said fund of $4,407.64, and averred that appellee bank gave credit therefor to Watson in the due course of business, denied "that at the time of receipt of said money it knew or had notice that such money was derived from sale of cattle sold to said Watson by complainant, or that complainant claimed or had a lien by virtue of its chattel mortgage upon said cattle." Said answer further admitted the payment of said checks to Owens and Montgomery, and averred that, after the payment of said checks, it applied the balance on hand in the account of Watson

upon his indebtedness, and denied that said fund was a trust fund to which appellant was entitled.

The bill was dismissed as to the defendants Owens and Montgomery. By leave of court, appellant filed an amendment setting forth that since the filing of the original bill the remainder of the cattle on which appellant held said mortgage was sold, and the sum of $1,009.48 was received therefor which should be credited on the claim of appellant.

Said cause was referred to a special master to take the evidence and to report the same, with his findings and conclusions of law and fact. Said evidence was so taken and reported. Objections were filed to the master's report by appellant, which, on being overruled, were made to stand as exceptions. The court modified the fourth finding of said report, and "ordered that the Report of said Special Master is hereby modified accordingly, so as to find under said item four of said report this said Watson was indebted to said State Bank of Roseville on August 1, 1923 in said sum of $1,850.00 on his unsecured notes, in addition to the amount of indebtedness as set forth in said report; and it is ordered that in all other respects all of said Exceptions of said complainant to said Report of Special Master are overruled; and it is further ordered that said Report of said Special Master as modified above, be approved and confirmed."

The master found that the chattel mortgage to appellant was void as to third parties for the reason that it was acknowledged before a justice of the peace of Roseville township, whereas Watson resided in and the cattle were located in Ellison township. The master further found that appellee bank received said deposit in due course; that its application on the indebtedness owing by Watson was in the regular course of business, and that appellant was not entitled to a lien thereon.

The sixth finding of the master is as follows:

"6. That on August 21, 1924 said defendant bank had knowledge that said $4,407.64 was proceeds from sale of cattle mortgaged by said Watson to said complainant, and that subsequent to time of such knowledge, but prior to time of any change in status of account or indebtedness between said Watson and said State Bank of Roseville (except for entry of credit of said $4,407.64 to said Watson's account as above set out) said Watson requested said bank to send $3,000.00 of said $4,407.64 to said complainant which request was refused; that afterwards on same day said bank honored and paid check of said Watson to defendant W. C. Owens for $700.00 and the check of said Watson to defendant Max Montgomery for $1,182.20 which said checks were paid out of said $4,407.64 and a certain deposit by said Watson of $495.90 made August 21, 1924, and were paid under an agreement by the said bank and said Watson without knowledge or consent of said complainant."

This finding was not excepted to by either party. It being a finding of fact on issues made by the bill and answer, it is to be taken as true. *Pennell v. Lamar Ins. Co.*, 73 Ill. 303–306; *Gehrke v. Gehrke,* 190 Ill. 166–175; *Cheltenham Imp. Co. v. Whitehead,* 128 Ill. 279–284; *Barney v. Board of Com'rs of Lincoln Park,* 203 Ill. 397–403.

In addition to the facts found by the master, the evidence discloses that Watson had, for practically all his business life of some 20 years, been a patron of appellee bank, his confidential adviser being H. E. Lance, its cashier. The testimony of said cashier is that at the time the letter in question was written Watson owed $20,000 secured by a real estate mortgage on 80 acres of land, being all of the land Watson owned, $7,000 secured by a chattel mortgage, a balance on two unsecured notes of $1,850, and an overdraft in appellee bank of $364.41; that, from that time on until the

deposit of the proceeds of the sale of said cattle, Watson had been overdrawn in said bank practically all the time.

The question for our determination is as to whether, with the knowledge appellee bank possessed, at the time it received said deposit, it can hold the same as against appellant in a court of equity.

While, as a general proposition, where a party deposits funds in a bank, the fund becomes the property of the bank and the relation of debtor and creditor is created by the transaction, yet, where a bank has knowledge that the fund being deposited belongs to another or is a trust fund in the hands of the depositor, it creates an exception to said general rule.

"A bank which has notice that a deposit is in reality the fund of another may refuse to honor the check of the depositor." *Hanna v. Drovers' Nat. Bank,* 194 Ill. 252; *First State Bank & Trust Co. v. First Nat. Bank of Canton,* 314 Ill. 269–273.

"Money held in a fiduciary capacity by one who places it in a bank can be recovered from the bank, although mixed with the depositor's own money; that the person for whom he held the money can follow it and has a charge on the balance in the banker's hands, notwithstanding the mingling of the funds.  *  *  * Although the relation between a bank and its depositor is that merely of debtor and creditor and the balance of account is only a debt, if the money is held by the depositor in a fiduciary capacity its character is not changed by being placed to his credit with his own money in his bank account." *Woodhouse v. Crandall,* 197 Ill. 104–112, 113, citing *Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co.* 104 U. S. 54.

In *Clemmer v. Drovers' Nat. Bank,* 157 Ill. 206, a bill had been filed by a shipper for the purpose of having an equitable lien decreed on the proceeds of a sale of stock through Hanna, Son & Company at the Union Stock Yards, Chicago, and which funds had been by

said commission firm deposited with the proceeds of sales for other consignors, to its credit in the Drovers' National Bank. Said bank applied the deposits of that day on an indebtedness owing to it by said commission firm. The court in its opinion discusses the fact that said bank had knowledge of the character of business transacted by Hanna, Son & Company; that they were selling live stock for their consignors, and that the funds deposited to the credit of said firm were derived from such sales, and held that while the bank did not know from what particular consignment or consignments the funds were derived, it did know or had reason to know that they were derived from sales of stock so consigned to said firm. The court at page 216 says:

"It is well settled that a factor has no right to pledge, deposit or apply the property of his principal to secure or pay his own debt. (*First Nat. Bank v. Schween*, 127 Ill. 573; 3 Am. & Eng. Ency. of Law, 345.) Appellee knew that the moneys collected and deposited by it on the tickets received from Hanna, Son & Co. were the proceeds of the sales of stock consigned to them for sale on commission, and was bound to know it had no right to apply these moneys in payment of its own demands against the commission merchants.

"As to the contention that it cannot be known that this balance applied by appellee on the note was the moneys of appellants, and that all of appellants' moneys may have been drawn out by Hanna, Son & Co. and embraced in the $9000 checked out on the 9th day of June, it is sufficient to say that it must be presumed that they checked out their own moneys to others, rather than the moneys of appellants. *Knatchbull v. Hallett, (In re Hallett's Estate)* 13 Ch. Div. 696.

"We think it clear, from the evidence, that this balance really belonged to appellants, and that they had the right to recover it in some appropriate action cannot well be doubted."

In *Union Stock Yards Nat. Bank v. Gillespie,* 137 U. S. 411, 34 L. Ed. 724, being a case somewhat similar to this, the court at page 423 (L. Ed. 727) says:

"The question here is not as to the character of the obligation of factor to principal, but as to the liability of one who takes from a factor, in payment of his debt, moneys which he knows equitably belong to that factor's consignor and principal. Justice forbids the upholding of such a transaction, and demands that the Bank, receiving from the factor in payment of a debt from the factor to itself, moneys which it must have known were the proceeds of the property received from his consignor and principal, account to that principal for the moneys so received and appropriated. * * *

"It cannot be doubted that an element of a fiduciary nature enters into the obligation of the factor—an element different from that which exists in case of vendor and purchaser. There is a confidence beyond that in the capacity and willingness of a debtor to pay; there is a reliance of a principal on his agent, a confidence that the agent will do as his principal directs, and be loyal to the duties springing from such relation. * * * While it may be true that a legal title to the moneys received on such sale is in the factor rather than in the principal, so that the principal may not maintain an action at law as against one receiving such moneys from the factor, yet, equitably, those moneys belong to the principal, and equitably they may be followed into the hands of any person who receives them chargeable with notice of their trust character." Citing *Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co.,* 104 U. S. 54, 26 L. Ed. 693.

To the same general effect in principle is *First Nat. Bank of Jerseyville v. Belt,* 29 Ill. App. 194. In *Hanna v. Drovers' Nat. Bank, supra,* the court at page 257 says: "Had the bank, with knowledge of the fact that the money belonged to Clemmer and others, paid it upon the checks drawn to Hess Bros. and others, it

would have thereby aided and abetted the plaintiffs in perpetrating a fraud upon those parties * * *.

"It may be conceded that, as a general rule, it is the duty of a banker to pay money on deposit with it to the party in whose name it is deposited; but where it has notice of the fact that the fund belongs to another, it may refuse to pay it to the depositor and be compelled to pay it to the real owner. That is settled by our decision in the chancery suit (*Clemmer v. Drovers' Nat. Bank*), *supra.*"

In *State Nat. Bank v. Payne,* 56 Ill. App. 147, being a suit instituted by a mortgagee against a bank to recover the proceeds of certain mortgaged property which had been sold by the mortgagor and checks taken therefor in the mortgagor's name, it was held that the bank having notice of the source thereof could not apply the proceeds of said checks on an indebtedness owing to it by said mortgagor. The court at page 148, in discussing this question, says:

"The defense is that the bank is not liable because there was no privity between it and appellee. This action is for money had and received by appellant for use of appellee, which is of an equitable character and lies wherever the defendant has money which, *ex equo et bono,* belongs to the plaintiff. In this case, though the legal title to the money was in Diggs, if the bank, through its officer, Jones, who received it, had notice that it was impressed with a trust in the hands of the party from whom he received it, we understand that the *cestui que trust* may recover it in this action at law as well as in equity."

While the chattel mortgage in question was void as to third parties, it was a valid and subsisting lien as between appellant and Watson.

Upon a review of the foregoing authorities, we hold that the sale of the cattle in question without the knowledge, consent or acquiescence of appellant created in the proceeds a constructive trust in the hands

of Watson for the benefit of appellant under said mortgage, and that appellee bank, having knowledge of said indebtedness, and that the proceeds of said sale were the proceeds of cattle covered by the mortgage held by appellant, received said funds charged with said trust, and was not authorized to apply the same on said overdraft.

Counsel for appellee bank strenuously insist that no notice was brought to the bank, of the right of appellant in the proceeds in question, sufficient to impress said fund with an equitable lien in appellant's favor. Under the holding of our Supreme Court in *Clemmer v. Drovers' Nat. Bank, supra,* and of the United States Supreme Court in *Union Stock Yards Nat. Bank v. Gillespie, supra,* we hold that this point is not well taken. If there was sufficient notice in those cases, certainly, under the finding of the master in this case, to which no exception was taken, and under the undisputed evidence in the record, there was a sufficient notice here to so charge appellee bank. Appellee bank had done nothing on the faith of said deposit to prejudice itself, prior to the demand made by Watson for said draft of $3,000 to send to appellant. At the time Watson made the demand for said draft, he had not then made the deposit of $495.90, which appears from the books of the bank to have been entered therein prior to the entry of the $4,407.64 item; in other words, before the entry had been made in the books of the bank giving credit to Watson, Watson had made the demand for the $3,000 draft to send to appellant. While appellee's officers informed Watson that they had received the credit from the bank at Chicago, they refused to honor his draft.

In the correspondence of appellee bank with appellant with reference to the disposition of the proceeds of the sale of said cattle, appellee bank took the position that the checks to Owens and Montgomery were paid in the regular course of business out of said funds.

These checks were paid subsequent to the demand made by Watson for the draft to send to appellant. It cannot be said that the regular course of business was pursued in refusing to issue a draft on Watson's demand, and thereafter paying subsequent checks out of funds on hand at the time the draft to be sent to appellant was demanded.

It was strenuously urged by counsel for appellant that the letter of said cashier, with reference to the standing, etc., of Watson, was the letter of the bank and appellant having relied thereon was entitled to a lien on the funds in question. We are not passing on the question as to whether or not the letter of Lance was the letter of the bank. It is only necessary to say that the court had the right to take it into consideration, together with all the other facts and circumstances, in determining whether appellee bank had notice with reference to the trust character of the funds in question.

For the reasons above set forth, the decree will be reversed and the cause remanded, with directions to enter a decree in favor of appellant for an equitable lien on the funds deposited to the credit of Watson in appellee bank on August 21, 1924, for $2,912.32, with interest thereon from September 18, 1924, at the rate of five per cent per annum. Appellant is not entitled to an attorney's fee as against said bank.

*Reversed and remanded with directions.*