JACOB SINGER

*v.*

HENRY F. JENNISON *et al.*

ALLEGATIONS AND PROOFS. Where a bill contains allegations entitling complainant to relief, they must be proved by at least a preponderance of evidence. When the evidence is conflicting, and there is not a preponderance in favor of the bill, or where the preponderance is against the bill, relief should not be granted.

APPEAL from the Superior Court of Cook county ; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. HERVEY, ANTHONY & GALT, for the appellant.

Mr. JESSE O. NORTON, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This bill was filed by appellant, the complainant below, to enjoin the attempted sale of real estate to satisfy certain notes secured by a trust deed upon the property.

The questions involved are to be determined entirely by the facts.

The complainant claims that the notes were made and delivered to secure the repayment of money advanced; that the money has been repaid, and the notes, having accomplished their purpose, should be cancelled.

On the contrary, the defendants insist that the debt, to secure which the notes were given, has never been paid; and that the trustee was proceeding rightfully to sell the property for satisfaction of this debt.

We have weighed and compared the evidence, with a view to form a correct judgment as to the rights of the parties, and in arriving at a conclusion, it may be best to collate somewhat the testimony.

The facts about which there is no dispute, are, that complainant and one Silverman bargained with the defendants, Stark & Clark, for a distillery, at the price of $15,000; and the complainant executed three notes, payable to the order of Silverman, in twenty, sixty and ninety days from date, and delivered them to Silverman. This occurred in Mobile, Ala., on the 20th of October, though the notes were not then dated. They bear date on the 13th of November following. Soon after this bargain, the complainant and defendant Clark came to Chicago.

The next advance in the progress of this affair was a telegram from the complainant to Silverman, transmitted from

Chicago to Mobile, on the 12th of November, in these words: "Will Stark accept mortgage, twenty thousand, furnish ten thousand if necessary, on (describing the property)? if so, Charles leaves with papers."

Silverman replied, on same day: "Trade closed; papers exchanged. Send Charley immediately with mortgage; have distiller come at once; will be ready to mash on Tuesday; money matters satisfactory."

Between the 17th and 20th of November, the complainant sent the trust deed and notes. The time fixed for the maturity of the notes was not satisfactory, upon their arrival at Mobile.

About the last of November, the complainant, with his wife, proceeded to Mobile; and on the 7th of December the notes and trust deed in controversy were executed.

The distillery was seized by the United States, under the internal revenue law, for non-payment of taxes, and only $440 of the $15,000, the purchase money of the distillery, have been paid; but all the money advanced by the defendants, for the purpose of carrying on the distillery, has been repaid.

The complainant, to maintain his view, testified that the notes and trust deed were not delivered to the defendants as collateral security for the payment of the purchase money of the distillery, but only to secure them for moneys advanced. He also introduced copies of two letters from the defendants, in which they state, substantially, that the claim, to secure which the notes and mortgage were given, had been arranged, and directing that they be returned to the complainant. He stated that Silverman handed them to him, and said that Stark had requested him to do so, and that he suggested to him to leave Mobile and return to Chicago, where he could obtain his papers, as the letters had been sent to the parties who had charge of the papers.

In opposition, both defendants swore positively that the notes and trust deed in question were given as security for the purchase money of the distillery, as well as advances of money.

446    SINGER *v.* JENNISON *et al.*    [Sept. T.,

Opinion of the Court.

To the same effect is the testimony of Silverman, the partner of complainant.

Mitchell, a witness without any interest in the suit, testified that the defendants were to advance $5,000 to carry on the business of the distillery; and the complainant was to give notes, secured by trust deed upon property in Chicago, to secure the money advanced, and to be collateral security for the price of the distillery.

Anderson, a lawyer of Mobile, testified that the complainant told him that he and Silverman had purchased the distillery for $15,000, and, to secure payment, had made a mortgage on his property in Chicago.

The conduct of the parties, the dispatches between complainant and Silverman, and the date of the notes given for the distillery, throw some light upon this transaction.

The terms of the bargain having been agreed upon, and the notes having been executed and left with Silverman, the complainant returned to Chicago, accompanied by one of the defendants. Silverman, as he testified, was thus "virtually alone" in Mobile. The money first advanced was upon his responsibility, and he was awaiting a reply to his letter to complainant, to determine the future relation between them.

The reply came in the telegram of November 12th. On the same day Silverman answers: "Trade closed; papers exchanged." The notes given for the distillery bear date on the next day, and the fair inference is, that the bargain was then complete. The notes were indorsed by Silverman, and delivered to the defendants.

They were satisfied, by the telegram, that they could obtain security upon the property in Chicago, and authorized the dispatch to the complainant.

Upon any other hypothesis, what is the meaning of the words, "trade closed; papers exchanged"? They had no reference to the notes and trust deed, for they were not in Mobile—probably not then in existence. They had no reference

to the trade about the property in controversy, for it was not, in fact, closed until the 7th of December afterwards.

They could only refer to the trade about the distillery, which was then closed with a reliance upon the notes secured by the deed of trust upon the Chicago property.

The copies of the letters referred to are susceptible of explanation, and their force very much weakened by a reference to and consideration of the testimony.

Silverman stated that the purpose of showing the letters to the complainant was to compel him to leave Mobile; that he desired his absence, as he had threatened him with prosecutions for violations of the revenue laws; and that the complainant agreed to leave, and said he would consult his lawyer, and if the papers were right, he would accept them. He did consult Anderson, a lawyer in Mobile, and informed him that he was involved in trouble with the United States, but he did not intimate, either to Silverman or to the defendants, any intention of accepting the proposal contained in the copies of letters handed to him.

Stark admitted that he gave to Silverman the original letters to copy, and to obtain the sanction of the complainant; but that he was disgusted with him, and when he learned the nature of his demands, he burned the letters, and had never forwarded them.

This ruse may not have been justified, but, under the proof, it should not be construed as a release of the security, or an admission that the notes and trust deed were not given as security for the purchase money of the distillery.

The allegations of the bill are not sustained by the evidence. The testimony most decidedly preponderates in favor of the conclusion that the notes and trust deed in dispute were given as collateral security for the payment of the purchase money of the distillery.

The complainant has slept upon his assumed rights, and never demanded the trust deed and notes. His conduct was incompatible with the theory of the bill. He never moved in

a matter of such deep interest to him, until the trustee had advertised the property for sale.   A prudent man would never have rested until he had obtained possession of papers which evidenced so burdensome an incumbrance upon his property, if it was, in fact, unsubstantial.

As $440 had been paid towards the purchase of the distillery, the trustee must be enjoined from selling for that sum, and ordered to sell for the balance of the purchase money.

The decree must, therefore, be reversed and the cause remanded

*Decree reversed.*