GLUTH BROTHERS CONSTRUCTION, INCORPORATED, *et al.*, Plaintiffs-Appellees, v. UNION NATIONAL BANK, Defendant-Appellant.

Second District   No. 2—87—0322

Opinion filed February 3, 1988.

Robert A. Chapski and Randy K. Johnson, both of Law Office of Robert A. Chapski, Ltd., of Elgin (Vincent C. Argento, of counsel), for appellant.

Caldwell, Berner & Caldwell, of Woodstock (James E. Berner, of counsel), for appellees.

JUSTICE INGLIS delivered the opinion of the court:

This is an action in equity to recover from defendant bank certain funds that were deposited by Valley Engineering Company (Valley) in defendant, which defendant had taken claiming a setoff to satisfy certain indebtedness of Valley.

Plaintiffs, Gluth Brothers Construction, Inc., and Wayne E. Zimmerman, had entered into a joint venture agreement with Valley to enter into a contract with the city of Elgin for a public works project known as the "Western Elgin Area 1 Contract." The joint venture agreement provided in pertinent part:

> "TRUST FUNDS: All monies contributed by the parties to this Joint Venture and all monies received as payment under the Construction Contract are hereby designated as trust funds and shall remain such until the Construction Contract shall have been fully completed and accepted by the Owner, until all obligations of the parties hereto have been paid, otherwise discharged, or provided for by adequate reserves and until the profits, if any, shall have been distributed to the members of the Joint Venture. Such reserves shall likewise be treated as trust funds until they have served the purposes for which they were created."

On October 16, 1981, the joint venture wrote a check, from an account held with defendant, payable to Valley in the amount of $195,609.56. Dennis Maher deposited that check into Valley's checking account. At this time, Valley was indebted to defendant in an amount of approximately $280,000. Thereafter, defendant set off the funds on deposit in the Valley checking account to satisfy the indebtedness that Valley owed to defendant.

Valley subsequently defaulted on its obligation and filed for relief under the bankruptcy laws.

A bifurcated trial was held to determine liability and damages.

At the trial on liability, William E. Manning, who was president of Union National Bank when the incidents in question took place, testified that he knew Dennis Maher, who had been a customer of the bank for some time. He discussed the Elgin project with Maher, received a request for funds for the project from Maher and received documents for consideration from Maher. He knew about the joint venture with Gluth, Zimmerman and Maher.

Manning testified that he received a copy of the joint venture agreement prior to approval of the loan. He also accepted a copy of the joint venture agreement to open up the joint venture checking account in April 1981. At his request, article 10 was eliminated from the joint

venture agreement so Valley could assign its interest to the bank. The assignment in evidence is the one submitted to the bank by Valley.

Manning never asked that paragraph seven concerning trust funds be eliminated from the joint venture agreement. The entire loan committee and Fred Shaw, the executive vice-president of the bank, would have participated in the decision relating to the making of this loan to Valley Engineering.

Before the loan was approved, Manning obtained some estimates from Maher as to what profit was anticipated on the project. The bank has a document in its file indicating a profit of $25,000 after all expenses. The document was submitted by Maher of Valley. The loan was approved, and the joint venture opened an account at the bank.

The bank had also obtained a copy of the specifications on the contract. All the officers of the bank would have been involved in the loan committee.

Manning further testified that before he went to the hospital (he was in the hospital on October 16, 1981) he and Maher reviewed Maher's income on the site. Each time Maher came in with a payout where he received a payout, he brought the worksheet in that he had on it.

Manning did not tell Maher that they were going to offset any of the funds in his account. When Manning was asked, "[D]id you at any time demand of Mr. Maher in the months prior to October 16, 1981, that he make payment on this indebtedness to the bank?" Manning answered, "How could we? He wasn't making any money. How could we demand payment when he did not have it?" Manning also acknowledged that during that period of time before he went in the hospital Maher did not have any money to make payments.

While Manning was in the hospital, Shaw came to the hospital and told Manning about the $195,000 check. Manning told Shaw, "Let's offset our loans against it." When asked if Shaw told him where that $195,000 came from, Manning answered, "I can't recall if he did or not." After a colloquy between the lawyers, the court, and the witness (Manning), questioning continued, and Manning stated that he had given the following answer to the following question at an earlier deposition. "Did he tell you how the funds happened to get in the account? I don't recall. There was only one place it could have come from, the Joint Venture." He went on to say that, "We may have had a discussion as to the source of the funds."

Fred Shaw, who was president of the bank at the time of trial, testified that he did not recall checking Valley's loan file or reviewing the joint venture agreement before he offset the funds. Rod Kuecker,

a loan officer, told Shaw there had been a large deposit into the account. Kuecker was monitoring the account. Kuecker said there had been a large payout under a contract that was due to Valley. Shaw did not recall exactly if he said what contract. He understood from Manning that Valley was involved in a joint venture. Manning and he discussed the setoff at the hospital.

The offset took place on October 20, 1981.

At the close of the trial on liability, the trial court found that defendant had wrongfully set off the funds in Valley's account and, after a hearing on damages, entered the following award:

"1. Claims and bills paid by plaintiff:  $221,167.11
2. Labor and Materials furnished
   by Gluth:  64,470.00
3. Labor and materials furnished
   by Zimmerman:  48,743.75
4. Interest on above amounts from
   date bills paid and date labor and
   materials billed (at 5% per annum):  84,513.22
5. Additional Interest on $195,609.56
   from 10-20-1981 at Union National
   Bank Prime Rate (less 5% on said
   amount awarded in paragraph 4):  72,455.70

TOTAL:  $491,349.78"

Defendant raises the following issues on appeal: (1) whether defendant properly exercised its right of setoff; (2) whether the trial court applied the correct burden of proof; (3) whether fraud or a fiduciary duty need be shown to establish a constructive trust; (4) whether defendant was a secured creditor with a perfected security interest in the funds that it set off; (5) whether defendant was given express written authority to set off the funds in Valley's account; (6) whether plaintiffs established a causal connection between the setoff and the damages awarded; and (7) whether the imposition of attorney fees was proper.

■ Because defendant's first two contentions are heavily dependent on the facts, we elect to consider them together. Defendant contends that it properly exercised its right of setoff since Valley was indebted to it and the funds were taken from a general account in which plaintiffs had no interest. Defendant also contends that the trial court applied the wrong burden of proof. Defendant argues that in cases such as this the evidence must be clear and convincing and that the trial court applied a preponderance of the evidence burden of

proof. In response, plaintiffs contend that the setoff was improper due to the fact that Valley was holding the funds in trust and defendant was aware of the trust. Plaintiffs also contend that they were only required to prove their case by a preponderance of the evidence.

The relation between the bank and a depositor is that of debtor and creditor. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391.) The deposit itself goes to the bank's general fund, and the balance due on account is only a debt. (*Kamfner v. Auburn Park Trust & Savings Bank* (1931), 344 Ill. 200, 205.) The bank may look to deposits on hand to satisfy any indebtedness on the part of the depositor. (*Sachs v. Sachs* (1913), 181 Ill. App. 342, 344.) This right of setoff exists even where trust funds are deposited to the individual account of a fiduciary. (See *Kamfner*, 344 Ill. at 206.) However, where the depositor holds funds in trust for another party and has deposited such funds in his own account, and the bank knows of the trust, the bank may not set off these funds to satisfy any indebtedness of the depositor. (*Clemmer v. Drovers' National Bank* (1895), 157 Ill. 206, 216; *Live Stock Exchange, Inc. v. State Bank* (1928), 249 Ill. App. 44, 49; *Union Stock Yards National Bank v. Gillespie* (1890), 137 U.S. 411, 419-20, 34 L. Ed. 724, 727, 11 S. Ct. 118, 121; *In re Tonyan Construction Co.* (N.D. Ill. 1983), 28 Bankr. 714, 725; see also *Kamfner*, 344 Ill. at 206; *In re Estate of Muhammad* (1984), 123 Ill. App. 3d 756, 759 ("[W]hen a bank has either actual or constructive notice that the beneficial ownership of an account lies outside the legal title, the bank may not deal with the account's contractual owner to the detriment of the equitable owner").) Furthermore, knowledge that a depositor's business customarily requires the handling of funds in which others have an interest, together with cognizance of circumstances which tend to individualize a deposit or line of deposits, may constitute notice of facts sufficient to put the bank upon inquiry as to the true nature of the deposit. (*In re Tonyan Construction Co.*, 28 Bankr. at 725-26.) Thus, in the present case, even if defendant had a right to set off, that right was limited if plaintiffs held equitable interest in the funds set off and defendant knew of this fact. We next move to consider the burden of proof by which plaintiffs were required to establish their case.

■ In beginning our analysis we note that this is an action that was brought in chancery and one which has all the markings of seeking the establishment of a constructive trust. In an early Illinois Supreme Court case in which a plaintiff sought to enjoin the sale of real estate, the court reviewed the evidence presented at trial and reversed the decree of the trial court stating, "[t]he testimony most de-

cidedly *preponderates* in favor of the conclusion that the notes and trust deed in dispute were given as collateral security for the payment of the purchase money of the distillery." (Emphasis added.) (*Singer v. Jennison* (1871), 60 Ill. 443, 447.) Thus, under *Singer*, it would appear that the proper burden of proof for an equity case is a preponderance of evidence standard. However, it has also been stated that "in order to obtain equitable relief it is necessary that a complainant must establish the facts supporting such claim by clear and convincing evidence." *Dilatush v. Salyers* (1936), 285 Ill. App. 281, 287.

More recently, our supreme court has held that where a party is attempting to impose a constructive trust by way of a fiduciary relationship, the fiduciary relationship must be proved by clear and convincing evidence. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 303.) Similarly, if a plaintiff is attempting to impose a constructive trust by showing fraud, that fraud must also be proved by clear and convincing evidence. 67 Ill. 2d at 303.

Because the gravamen of the complaint in the present case is that defendant wrongfully appropriated money in which plaintiffs had an interest, imposition of a constructive trust would be the proper remedy. (See *County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, 755.) This being the case, we are convinced that this action is governed by the supreme court's decision in *Ray v. Winter* (1977), 67 Ill. 2d 296, and that the trial court was thus required to apply a clear and convincing standard of proof.

In the instant case, there was a bifurcated trial on liability and damages. Although the trial court made reference to "preponderance of evidence" at the close of damages, the trial court made no mention of the standard he used for liability. We therefore conclude that on the issue of liability the trial court used the proper standard. We also find that the finding of liability was adequately supported by the record. The record discloses that defendant was intimately acquainted with the accounts of both Valley and the joint venture and the joint venture agreement through Manning, the bank's president. Manning testified that Valley through Maher requested funds for the Elgin project. He further testified that the bank had received a copy of the joint venture agreement prior to making the loan to Valley, and that the bank had sought and received a waiver of paragraph 10 of the agreement, which had prohibited assignments. Manning's testimony also revealed that the bank was aware that Valley had no other funds, was expecting an estimated profit of only $25,000, and that the funds could only have come from the joint venture. Additionally, the bank

reviewed Maher's income and work sheets on Valley's payouts. Thus, we find that the record indicates sufficient evidence to meet a clear and convincing standard that defendant knew that plaintiffs had an equitable interest in the funds which were set off. Therefore, the trial court's finding on liability was proper.

■ Defendant next contends that even if there was a trust, plaintiffs should not be able to make such a claim in a court of equity since plaintiffs themselves did not treat funds that they received as trust funds. Defendant argues that to hold that there was a trust fund under the circumstances presented would violate the maxim that he who comes into equity must do equity.

Defendant has made this argument without citation to either authority or the record in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)). The absence of proper presentation prevents this court from making an informed analysis of the issue. Where an appellant has failed to provide authority we will neither do its research nor act as its advocate. We therefore find this issue to be waived.

■ Defendant next contends that in order to establish a constructive trust one must either establish actual fraud or prove a fiduciary relationship and subsequent abuse of that relationship. We disagree.

In *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, our supreme court recently stated:

> "A constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct. [Citation.] Where property has been acquired wrongfully, the party in possession may be declared to be a constructive trustee of the property if it would be unjust for that party to retain it. The constructive trust arises by operation of law, and the constructive trustee's sole duty is to transfer title and possession to the beneficiary. [Citation.] Some form of wrongful or unconscionable conduct is a prerequisite to the imposition of a constructive trust. As the court in *Ray v. Winter* (1977), 67 Ill. 2d 296, explained, 'Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary relationship and subsequent abuse of such relationship.' [Citations.] Similarly, duress, coercion and mistake have been grounds for imposing a constructive trust." 114 Ill. 2d at 293.

Clearly, under the foregoing statement imposition of a constructive trust is not limited to cases in which there is fraud or breach of a fiduciary relationship. The court recognizes that "duress, coercion and

mistake have been grounds for imposing a constructive trust." (114 Ill. 2d at 293.) Yet, we do not believe that this enumeration of reasons is exclusive of others. Rather, what we focus on is the court's requirement that there is a wrongful acquisition of property and that it would be unjust to allow the acquiring party to retain it. (114 Ill. 2d at 293; see also D. Dobbs, Remedies 246-47 (1984) (constructive trust is a remedial device, to be used wherever specific restitution in equity is appropriate); G. Bogert, Trust & Trustees §471, at 26-29 (2d ed. rev. 1978).) We also find that this view is in accord with this court's holding in *County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, a case decided prior to *Hester*, wherein this court stated:

> " 'It is an elemental principle of law, applied in both law and equity courts, that where one person has received money or its equivalent, which belongs to another, under such circumstances that in equity and good conscience he ought not to retain it, recovery will be allowed. [Citations.]' " (27 Ill. App. 3d at 755.)

Quoting *In re Estate of Ray* (1972), 7 Ill. App. 3d 433, 439, the court continued:

> " 'While it is true that a constructive trust may arise out of fraud or the breach of a confidential relationship, the extent of their utilization is by no means restricted to those grounds. A court of equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party to the transaction, without violating some established principle of equity. [Citations.]' " (*X-Po Security Police Service, Inc.*, 27 Ill. App. 3d at 755.)

The court concluded finding "that in order to establish the constructive trust *** [i]t is sufficient if, in fact, the party has received money properly belonging to another under circumstances that in equity he ought not be allowed to retain it." 27 Ill. App. 3d at 755; see also *Chicago Park District v. Kenroy, Inc.* (1982), 107 Ill. App. 3d 222, 224; *Selmaville Community Consolidated School District No. 10 v. Salem Elementary School District No. 111* (1981), 96 Ill. App. 3d 1062, 1066-67.

In the present case, defendant was not entitled to the funds it set off due to the fact that defendant was aware that the funds were being held in trust for plaintiffs. (*Clemmer v. Drovers' National Bank* (1895), 157 Ill. 206, 216.) The fact that defendant set off the funds in spite of its knowledge was therefore wrongful. Consequently, we find

that under *Charles Hester Enterprises, Inc.* imposition of a constructive trust is proper. This decision is also in keeping with the Restatement (Second) of Trusts wherein it is stated:

> "If a trustee commits a breach of trust in depositing trust funds in a bank and the bank when it receives the funds has notice of the breach of trust, the bank is liable for participation in the breach of trust, and is chargeable as a constructive trustee of the funds." (Restatement (Second) of Trusts §324, comment *b*, at 118 (1959).)

Although there is no breach of trust by the trustee (Valley) in the instant case, it is clear from the Restatement that imposition of a constructive trust is proper. Surely if a bank is chargeable as a constructive trustee when it acts in concert with the trustee, it must also be chargeable as a constructive trustee when it acts alone.

■ Defendant next contends that it was acting as a secured creditor under Article 9 of the Illinois Uniform Commercial Code. Defendant claims that it had a perfected interest in the Elgin contract and all proceeds generated therefrom by the joint venture and that it thus had priority over the claims of plaintiffs. Defendant further claims that both Frank Gluth and Wayne Zimmerman executed a written consent in favor of the bank waiving paragraph 10 of the joint venture agreement which prohibited an assignment of interest. Once again we note that these contentions are made without citation to the record and are therefore in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) and considered waived. Nevertheless, we note that both the security agreement and the assignment of interest applied only to the assets of Valley Engineering and Valley's interest in the joint venture agreement. The waiver did not apply to paragraph 7 of the agreement, which imposes the trust. Therefore, neither the security agreement nor the assignment of interest is applicable since the equitable interest in the funds did not rest with Valley.

■ Defendant also contends that the setoff was proper since Valley gave it express authority to do so. As before, this argument must fail when the funds are found to be held in trust. The authority to set off funds was only as to funds which were the sole property of Valley. Such authority is not valid against funds held for another. See *In re Estate of Muhammad* (1984), 123 Ill. App. 3d 756, 759; *Live Stock Exchange, Inc. v. State Bank* (1928), 249 Ill. App. 44, 49-53.

■ We next consider the issue of damages. Defendant contends that plaintiffs failed to establish any causal connection between the setoff and damages claimed.

We begin by noting that the bank wrongfully set off the

$195,609.56, and an award in that amount would be the minimum the court could have awarded.

At trial, the court awarded an amount in excess of the $195,609.56 that defendant set off. The court awarded damages for expenses purportedly incurred by plaintiffs due to the bank's setoff. In doing so, the trial court found that plaintiffs were entitled to recover $221,167.11 for "[c]laims and bills paid by plaintiffs"; $64,470 for labor and material furnished by Gluth; and $48,743.75 for labor and materials furnished by Zimmerman.

The record reveals no evidence which shows that plaintiffs incurred damages in excess of the setoff. In order to do so, plaintiffs would have had to show that Valley was unable to perform the contract due to defendant's action. Yet, this does not appear from the record. What does appear from the record is that had defendant not set off the funds, Valley would still have owed defendant the amount that defendant set off. Consequently Valley's outstanding debts would have been the same, only its creditor would have changed. Thus, it appears likely that Valley would have declared bankruptcy even if defendant had not set off the funds in Valley's account. Thus, it is also likely that Valley would not have been able to complete its obligations to the joint venture even had defendant not set off the funds in Valley's account. Additionally, to receive the damages that they did, plaintiffs would have had to show that they incurred expenses greater than they would have incurred had Valley remained a viable entity. In the hearing on damages, plaintiffs only showed the amounts that they paid out. They did not establish that the joint venture would not have incurred those expenses had Valley remained in business. The joint venture agreement provides that the division of profits is to occur after paying all costs disbursed or incurred in the performance of the construction contract. Thus, the joint venture as a whole, and not Valley alone, would have incurred the costs that were paid out in excess of the $196,609.56. Therefore, to recover for payments that they made, plaintiffs would have had to show that the amounts were greater to them than they would have been to the joint venture as a whole had Valley remained viable. Consequently, we find that, except for interest, the amount of the award in excess of $196,609.56 was in error.

■ Defendant also contends that prejudgment interest should not have been awarded and that it was inappropriate for the trial court to award interest at the prime rate. We disagree.

A court of equity may assess interest when warranted by equitable considerations. (*Galler v. Galler* (1975), 61 Ill. 2d 464, 474.) Fur-

thermore, the proper remedy in a case such as this is the imposition of a constructive trust. Consequently, plaintiffs were entitled to receive any profit from defendant derived from those funds after the setoff. See D. Dobbs, Remedies 423 (1984).

Furthermore, we find the prime rate is appropriate for the assessment of interest because, presumably, once the funds were set off they became commingled with other funds of defendant. In such a case, the burden falls on the defendant to show what has happened to the funds. (*Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 111; D. Dobbs, Remedies 425 (1984).) Since defendant submitted no evidence as to what happened to the funds, we find that it was permissible for the trial court to presume that the bank invested the funds at the prime rate.

■■ Defendant next contends that the judgment awarded was inappropriate because the trial court did not deduct from that amount monies that would be paid to plaintiffs from bankruptcy proceedings. We disagree.

While plaintiffs are not entitled to receive a double recovery (see *Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558), none has been shown in the instant case. At the time of trial, plaintiffs had not received any money from the bankruptcy proceedings. Furthermore, plaintiffs should not be required to look to the bankruptcy proceedings for a remedy when it was defendant who wrongfully set off funds in which plaintiffs had an interest.

■■ Finally, defendant contends that the trial court improperly ordered defendant to pay plaintiffs' attorney fees and costs pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). Defendant argues that for an award of attorney fees to be appropriate, the party seeking such an award must demonstrate bad faith on the part of the opposing party. We disagree.

A party requesting an award for attorney fees need not prove bad faith on the part of the opposing party. (*Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 16.) To receive such an award, the moving party need only show that the opposing party has pleaded untrue pleadings of fact which it knew or reasonably should have known were untrue. 126 Ill. App. 3d at 16.

In the present case, there was evidence that defendant alleged that it had not received a copy of the joint venture agreement when in fact it had. Consequently, the court did not err in awarding attorney fees.

In conclusion, we affirm on liability and on attorney fees but reverse on damages. We remand with instructions for the trial court to

30

enter judgment in the amount of $195,609.56 plus interest on that amount from the time of setoff to the date of judgment at the then current prime rate.

Affirmed in part; reversed in part and remanded.

NASH and REINHARD, JJ., concur.