**Sara Louise Hickey BOYD, et al., Plaintiffs,**

v.

**Elaine LaMASTER, Defendant.**

**Civ. A. No. C 88–0123–L(A).**

United States District Court,
W.D. Kentucky,
at Louisville.

May 30, 1989.

William LeVitus, Chicago, Ill., Joseph L. White, Louisville, Ky., for plaintiffs.

Joseph L. Lenihan, Woodward, Hobson & Fulton, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, Senior District Judge.

This case, which has its roots in the estate of an Illinois resident who died in 1959, is before the Court on motions for summary judgment. The material facts do not appear to be in dispute, and the claims may be disposed of as a matter of law.

Plaintiffs Sara Louise Hickey Boyd ("Ms. Boyd") and James Hickey ("Mr. Hickey") are the children of Rollin Hickey, who died in January 1959. Plaintiffs are also the remaindermen beneficiaries of a trust known herein as Trust "B." The life beneficiary of that trust was Rollin Hickey's surviving spouse, Sara L. Hickey ("Ms. Hickey"). The trustees of Trust "B" were Ms. Hickey and Ms. Boyd. Ms. Hickey was administrator of Rollin Hickey's estate.

Designated in Rollin Hickey's will as part of the corpus of Trust "B" were 200 shares of Anheuser–Busch stock. As a result of stock splits, these 200 shares had grown to 880 shares by December 31, 1970, when Ms. Boyd and Ms. Hickey signed a document entitled "Receipt," which "acknowledged" that 880 shares were distributed to the trustees by Sara L. Hickey, executor of the estate. No transfer of the certificates took place at that time.

On April 20, 1971, Ms. Hickey transferred the 880 shares from herself as executor to herself individually. It is undisputed that they were not transferred to the trust. On April 28, 1971, a two for one stock split was declared, such that Ms. Hickey then held 1760 shares in her individual capacity. No revised estate accounting or "receipt" was prepared.

The final account for the estate was filed on September 22, 1971. It incorporated the Amended Supplemental Inventory that had been prepared on December 29, 1970, reflecting only 880 shares of Anheuser–Busch stock, and the order entered thereon recited that the estate had been distributed as of December 31, 1970, as set forth in the final account. On November 10, 1971, Ms. Hickey transferred 880 shares from herself individually to trust ownership; this figure

accorded with the September 22, 1971 final account. However, she retained the other 880 shares in her own name individually.

Between November 1971 and February 1986, stock splits had resulted in the 880 shares growing to 2640 shares. In February 1986, Ms. Hickey transferred the 2640 shares from her name individually to an account established for her niece, defendant Elaine LaMaster ("Ms. LaMaster"). Shortly thereafter, on August 7, 1986, Ms. Hickey died. A further two for one stock split declared a month later left 5280 shares of Anheuser–Busch stock in Ms. LaMaster's hands. In November 1986, plaintiffs made formal demand that Ms. LaMaster turn over to them the stock. She did not comply.

The complaint, filed February 25, 1988, seeks recovery of possession of the 5280 shares, or, in the alternative, seeks to impose on the shares a constructive trust for the benefit of the plaintiffs.[1] Ms. LaMaster's counterclaim seeks indemnification from Ms. Boyd in the event Mr. Hickey's suit is successful. This counterclaim is premised on the theory that Ms. Boyd, as co-trustee, was remiss in failing for fifteen years to pursue the stock.

Defendant argues that the complaint fails to state a claim against her. We agree. The theory of this litigation is that Ms. Hickey deprived Trust "B" of an asset properly belonging to it. Whether Ms. Hickey committed this wrong in her capacity as executor of the estate of Rollin Hickey or in her capacity as co-trustee of Trust "B," it remains true that the wrongful behavior, if any, of which plaintiffs complain was that of Ms. Hickey. The complaint does not allege that Ms. LaMaster participated in the wrongful conduct, or that she even had any awareness of the wrongful conduct. The only allegation of a "wrong" committed by defendant is that when she was asked, she declined to hand over what she had received as a gift from her aunt.

Plaintiffs have failed to point to either Kentucky or Illinois law that would indicate that they have a claim against such an innocent recipient of a gift. Illinois law makes frequent use of the remedy of constructive trust, but it does so where the defendant has committed a wrong. Thus, in *Gluth Bros. Constr., Inc. v. Union National Bank* (1988), 166 Ill.App.3d 18, 116 Ill.Dec. 365, 518 N.E.2d 1345, the court discussed the various types of wrongdoing that could justify imposition of a constructive trust, and cautioned that the focus must be on the requirement of "a wrongful acquisition of the property." The court then held that constructive trust was a suitable remedy where the bank had committed a wrongful act in attempting to set off funds that it *knew* were being held in trust for the plaintiffs. Other constructive trust cases in Illinois also focus on the circumstances of the transaction by which the defendant acquired the property, the underlying misconduct of the defendant. *In re Estate of Ray* (1972), 7 Ill.App.3d 433, 287 N.E.2d 144, *County of Lake v. X–Po Security Police Svc., Inc.* (1975), 27 Ill.App.3d 750, 327 N.E.2d 96, *Suttles v. Vogel* (1988), 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901, *Baumgartner v. First Church of Christ, Scientist* (1986), 141 Ill. App.3d 898, 96 Ill.Dec. 114, 490 N.E.2d 1319.

This case law accords with that of Kentucky. In the recent case of *Bjorkman v. Protestant Episcopal Church in the USA*, Ky., 759 S.W.2d 583, 587 (1988), the court noted the necessity for the plaintiff to point to some wrongful act by the defendant that led to acquisition of the property:

> The essence of the doctrine of constructive trusts is equitable in nature and devised by courts to prevent a party from benefiting to the detriment of another *by wrongful conduct.* A constructive trust may be imposed to restore beneficial ownership when legal title has been lost due to *illegal, deceptive or unconscionable behavior by the titleholder* [emphasis supplied].

As observed above, plaintiffs have not suggested that Ms. LaMaster, the titleholder,

---

1. The parties have not raised any question of whether the increase in shares represents income or accretion to principal, and this issue need not be addressed.

engaged in any type of illegal, deceptive or unconscionable behavior.

It is undisputed that plaintiffs have an adequate remedy at law against Ms. Hickey's estate. The property in question is not real estate, or ownership in a closely held corporation nor is it otherwise unique. Plaintiffs admit that Ms. Hickey's estate is entirely adequate to satisfy the claim.

Furthermore, plaintiffs have had an adequate remedy for a number of years. The wrong, if any, was committed in 1971. Ms. Boyd has explained that she has periodically followed the performance of stocks—including those belonging to Trust "B"—in *Value Line* since the 1970s [Boyd depo. 59–61]. She also admitted that she knew at least as early as 1981 that Ms. Hickey was holding in her own name stock that belonged to Trust "B" [Boyd depo. 49]. Nonetheless, although Ms. Boyd was co-trustee, she elected to do nothing.

Ms. Boyd asserted a claim against Ms. Hickey's estate on behalf of Trust "B" for other stock that was held in Ms. Hickey's individual name, a claim of which Mr. Hickey may be assumed to have been fully aware. Ms. Boyd explains that she elected not to file a similar claim as to the shares in issue in this case because such a suit would diminish Ms. Hickey's estate, and Ms. Boyd's children are beneficiaries of Ms. Hickey's estate. While Ms. Boyd admits understanding that a claim could be made against Ms. Hickey's estate for the value of the stock, and that avenue had been utilized as to other stock, she told Mr. Hickey that she "was not going to sue the Estate for the Anheuser–Busch, the value of the Anheuser–Busch. I suggested one alternative that I felt everybody would profit from, and I also suggested that he could sue the Estate, but I wasn't going to do it" [Boyd depo. 92]. Mr. Hickey did not wish to sue the estate.

We see nothing in the law of either Illinois or Kentucky that would permit plaintiffs to deliberately and intentionally forego an adequate legal remedy against one who has committed a wrong, and to then invoke equity to assist those plaintiffs in recovering property from one not alleged to have committed any wrongful act whatsoever. Plaintiffs' remedy, if any, is against the estate of Mrs. Hickey.

An order in conformity has this day entered.

### SUMMARY JUDGMENT

This matter having come before the Court on motions for summary judgment, and the Court having entered its memorandum opinion and being advised,

IT IS ORDERED that plaintiffs' motion for summary judgment is overruled.

IT IS FURTHER ORDERED AND ADJUDGED that defendant's motion for summary judgment is sustained.

IT IS FURTHER ORDERED that defendant's counterclaim is dismissed as moot.

This is a final and appealable order and there is no just cause for delay.