CHARLES BRANDT *et al.*, d/b/a Brandt Construction Company, Plaintiffs-Appellants, v. UPTOWN NATIONAL BANK OF MOLINE, Defendant-Appellee.

Third District   Nos. 3—90—0415, 3—90—0499 cons.

Opinion filed May 9, 1991.

Joan M. Scaia, of Bozeman, Neighbour, Patten & Noe, of Moline (Robert J. Noe, of counsel), for appellants.

Thomas A. Skorepa, of Klockau, McCarthy, Ellison & Marquis, P.C., of Rock Island (G. Trent Marquis, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, Charles Brandt (Brandt) and Henry Brandt, d/b/a Brandt Construction Co. (Brandt Construction), appeal from a judgment entered in favor of the defendant, Uptown National Bank of Moline (Uptown). On appeal, the plaintiffs raise various alleged errors on the part of the trial court. We find no reversible error and therefore affirm.

The instant case has had an extensive life, including two trials in Federal court. The facts are rather complex, and only those facts necessary for our disposition of the case will be presented.

In 1981, Brandt Construction was awarded two Federal contracts to renovate two buildings at the Rock Island Arsenal (the Arsenal). Roofing repairs on the buildings were to be undertaken by subcon-

tractor DeVolder Brothers Roofing Contractors, Inc. (DeVolder Roofing). Mike DeVolder (DeVolder) was the president of DeVolder Roofing. DeVolder and his company had been banking with Uptown for a number of years. DeVolder Roofing maintained a business checking account at Uptown. All funds received from various projects were deposited in this one account. As of late 1981, DeVolder Roofing owed Uptown in excess of $200,000 on a commercial demand note. The note was secured by the assets, inventory and accounts receivable of DeVolder Roofing. Uptown also had access to DeVolder Roofing's books and records. Brandt and Brandt Construction did not bank with Uptown.

The record shows that DeVolder Roofing did not have the cash flow necessary to finance its work at the Arsenal. Uptown agreed to lend up to $100,000 per month to DeVolder Roofing during the construction. The loan was to be repaid each month as DeVolder Roofing received payment from Brandt Construction. This extension of credit was in addition to the outstanding demand note. DeVolder had told Uptown that he hoped the profit from the Arsenal project would reduce or even pay off the balance of the demand note.

On May 4, 1982, Charles Brandt, Mike DeVolder and Ralph Schaller, vice-president of Uptown, held a meeting at the bank. At the meeting, the parties discussed how the monetary aspects of the Arsenal project would operate. DeVolder Roofing, like the other subcontractors on the project, would submit bills to Brandt Construction, which in turn would submit those charges to the Federal government. The government would pay Brandt Construction, and the company would then pay the subcontractors. During the meeting, Schaller requested that Brandt Construction make the checks jointly payable to DeVolder Roofing and Uptown.

Brandt testified that when he asked why the bank wanted the checks made out to both DeVolder Roofing and Uptown, Schaller replied, so that "the material suppliers, the subcontractor and we are assured of being paid." DeVolder also testified that such a statement was made by Schaller. Schaller denied making a promise that Uptown would make sure suppliers on the Arsenal job were paid. Schaller indicated that the reason for the joint checks was that they would serve as a form of collateral for the monthly extensions of credit.

The record also shows that a letter received by Brandt Construction on May 1, 1982, stated that as part of the collateral on a loan to DeVolder Roofing, DeVolder Roofing had assigned their accounts receivable on the project to the bank. The letter requested that when payment on the project was made, the check be made payable to

DeVolder Roofing and Uptown, and that the check be sent to the bank. The letter was signed as accepted by Charles Brandt on May 4, 1982. A similar letter was sent to Brandt Construction each month during the summer of 1982.

The financing and payment mechanism functioned with very few problems during the summer of 1982. DeVolder Roofing's work on the project was completed in the fall. As is the general practice in the industry, Brandt Construction retained a percentage of the amount due DeVolder Roofing until the project was completed. This retainage was in excess of $67,000.

On October 22, 1982, DeVolder met with Brandt. Brandt asked DeVolder if DeVolder's suppliers had been paid. DeVolder replied that they had been paid. Brandt then made out the check in the amount of the retainage to DeVolder Roofing and Uptown. DeVolder took the check to Uptown. He told Schaller that he needed the funds to pay suppliers on the Arsenal project, including Owens-Corning Fiberglas Corporation. It had been contemplated that the retainage would be used to reduce the amount owed on the outstanding demand note. Schaller indicated that he would have to discuss the matter with the executive committee of the bank.

Uptown exercised its right of setoff on DeVolder Roofing's checking account to cover the debt owed to the bank on the demand note. DeVolder Roofing therefore could not pay Owens-Corning. Within a matter of days, Uptown instituted foreclosure proceedings on the property of DeVolder Roofing. Subsequently, DeVolder Roofing filed bankruptcy under chapter 11 of the Bankruptcy Code (11 U.S.C. §1101 et seq. (1988)). When the company's attempts at reorganization failed, the firm was liquidated.

Because the Arsenal project involved Federal contracts, Brandt Construction was required to post payment bonds under the Miller Act (40 U.S.C. §270 (1988)). When Owens-Corning failed to receive payment from DeVolder, Owens-Corning brought an action under the Miller Act against Brandt Construction, the principal on the payment bonds. Owens-Corning obtained a judgment against Brandt Construction in the amount of $59,883.62.

The instant case arises out of the action brought by the Brandts against Uptown to recover the amount paid Owens-Corning plus punitive damages. Count I of the complaint alleged that Uptown wrongfully applied the retainage funds to an unrelated debt and that Uptown's actions were contrary to law. Count II alleged promissory estoppel, and count III alleged a breach of a fiduciary duty. The case was tried before a jury. The trial court granted a directed verdict as

to count I, finding the count failed to state a cause of action. The jury found for Uptown on counts II and III.

On appeal, the plaintiffs contend the trial court erred in directing a verdict on count I. The record shows that earlier in the proceedings Uptown's motion to dismiss count I was denied. On the subsequent motion for a directed verdict, the trial judge stated, "I am going to allow the motion on Count I, whether it's in the nature of a directed verdict or a reversal on a motion to dismiss, perhaps a technicality because I find for the record, that the original complaint and the evidence produced at trial, which would address, I presume, a request to amend to conform to the evidence, does not state a cause of action."

■ Whether we review the trial court's decision under the standard of review for directed verdicts or dismissals, we find no error. The plaintiffs argue that because Uptown knew that the funds were derived from the Arsenal project, Uptown was under an obligation to see that the funds were applied to the debts owed DeVolder Roofing's suppliers before the funds could be applied to the non-Arsenal-related debt owed to the bank. There is no basis in law for this supposition.

In addition, the cases cited by the plaintiffs in support of their contention are readily distinguishable. (See *United States ex rel. Hyland Electrical Supply Co. v. Franchi Brothers Construction Corp.* (2d Cir. 1967), 378 F.2d 134; *United States ex rel. C.H. Benton, Inc. v. Roelof Construction Co.* (9th Cir. 1969), 418 F.2d 1328; *Central Blacktop Co. v. Town of Cicero* (1988), 166 Ill. App. 3d 260, 519 N.E.2d 972.) These cases involve material suppliers who have supplied materials to a contractor on various jobs. In sum, the cases hold that when the contractor makes a payment, and the supplier knows from which project the funds are derived, the supplier is obligated to apply those funds to the account connected with that project, and not other debts owed to the supplier by the contractor. In the case at bar, the bank is not a material supplier but rather a creditor with a specific right of setoff and thus the cases are inapposite.

In their reply brief, the plaintiffs cite *Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 518 N.E.2d 1345. In *Gluth*, the plaintiffs entered into a joint venture with Valley Engineering Company involving a public works project. Their agreement provided that funds contributed by the parties and all funds received as payment on the project were designated trust funds until such time as the project contract was completed and all obligations were paid. Afterwards, profits, if any, would be distributed to the members of the joint venture.

Subsequently, the joint venture wrote a check on an account held with the defendant bank and payable to Valley. Valley deposited the check in its checking account which was also at the defendant bank. Valley apparently owed the defendant $280,000. The defendant set off the funds in Valley's checking account in satisfaction of the debt Valley owed to the defendant.

In the action brought by the plaintiffs to recover the funds set off by the defendant, the court held that the defendant's right of setoff was limited by the fact that the plaintiffs, with the knowledge of the defendant bank, held an equitable interest in the funds deposited by Valley. The court affirmed the trial court's finding that the defendant had wrongfully set off the funds from the Valley account. Citing established case law, the *Gluth* court stated in pertinent part: "The relation between the bank and a depositor is that of debtor and creditor. [Citation.] *** The bank may look to deposits on hand to satisfy any indebtedness on the part of the depositor. [Citation.] *** However, where the depositor holds funds in trust for another party and has deposited such funds in his own account, and the bank knows of the trust, the bank may not set off these funds to satisfy any indebtedness of the depositor." *Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 23, 518 N.E.2d 1345, 1349.

■ In the instant case, the money deposited in the DeVolder Roofing checking account was not held in trust, either actual or constructive. There was no written agreement stating that the funds deposited in the checking account were held in trust. Despite this seminal fact, the plaintiffs contend that Owens-Corning was the equitable owner of the funds because DeVolder Roofing was indebted to Owens-Corning, and Uptown had knowledge of this fact. We find this contention to be without merit. Should the plaintiffs' reasoning be carried to its logical conclusion, any debtor of a party who has a checking account would be deemed to have an equitable ownership in the funds in that account, thus limiting a bank's right to setoff.

In sum, under the facts of this case as alleged in count I of plaintiffs' complaint, Uptown was under no legal obligation to pay Owens-Corning or see that Owens-Corning was paid from the funds deposited by DeVolder Roofing. Uptown was under no obligation to see that DeVolder Roofing's debts to third parties were satisfied before it applied the funds to cover the obligation under the demand note. Therefore, the trial court correctly granted Uptown's motion on count I.

■ Next the plaintiffs contend the trial court erred in denying them the right to present relevant evidence, thus denying them a fair trial. Evidentiary rulings are within the discretion of the trial court,

and absent an abuse of discretion resulting in prejudice to the party objecting, those rulings will not be disturbed. *In re Estate of Weir* (1983), 120 Ill. App. 3d 18, 458 N.E.2d 134.

In the instant case, the trial court granted Uptown's motion to strike reference to the interest rate to be paid by DeVolder Roofing on the monthly $100,000 loans. In addition the trial court did not allow copies of the commercial notes between DeVolder Roofing and Uptown to go to the jury during their deliberations. The court was concerned with the fact that reference to the interest rate had been blocked out on the copies. We find that the trial court did not abuse its discretion. The interest rate paid by DeVolder Roofing was irrelevant to the action between Brandt Construction and Uptown. It was reasonable for the trial court to determine that this evidence had little or no probative value in the instant case.

The plaintiffs also contend that the trial court erred in refusing their offered instructions on fiduciary relationship.

The purpose of jury instructions is to advise the jury of the correct principles of law to be applied to the evidence admitted at trial. (*La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417.) While the trial court has considerable discretion in determining the form of the instruction to be given, the instructions given must be supported by some evidence in the record, they must correctly state the law, and they must not overemphasize any particular matter. (*Ramos v. Pankaj* (1990), 203 Ill. App. 3d 504, 561 N.E.2d 744.) Moreover, a reviewing court will not reverse a trial court for erroneously refusing an instruction unless prejudice has resulted. *Malek v. Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 466 N.E.2d 1038.

The plaintiffs initially tendered the following proposed jury instruction: "When I use the term 'fiduciary relationship' in these instructions I mean a situation where trust and confidence are reposed by one person in another who, as a result, gains a superiority over the other as to the transaction in question. This includes situations where one party pays money to the other party, as collecting agent, on the promise that the second party will use the money in the manner promised." The trial court refused to give this instruction, finding that a determination of whether a fiduciary relationship existed in this case was a question of fact. The trial court distinguished the situation in this case from one involving an attorney/client relationship in which the fiduciary relationship exists as a matter of law. The trial court stated that in that type of case the jury would simply be in-

structed that the attorney/client relationship is a fiduciary relationship.

Subsequently, the plaintiffs offered a revised instruction in which they altered the second sentence to read: "This could include situations where one party pays money to the other party, as collecting agent, on the promise that the second party will use the money in the manner promised." This proposed instruction was also refused and the jury instructed: "When I use the term 'fiduciary relationship' in these instructions I mean a situation where trust and confidence are reposed by one person in another who, as a result, gains a dominance, influence and superiority over the other as to the transaction in question."

■ We agree with the trial court that plaintiff's proposed second sentence implies a fiduciary relationship as a matter of law. In this case, such a relationship was a question of fact for the jury to determine. The instruction given adequately defined fiduciary relationship. We therefore find no error and no prejudice to the plaintiffs in the trial court's decision on this issue.

During deliberations the jury sent out a note indicating that the jury had a question concerning the meaning of the term "unambiguous" which was used in at least one of the instructions given to the jury. Over plaintiffs' objection, the trial court wrote out and sent to the jury the following definition from the Random House Dictionary: "unambiguous—not open to various interpretations; not having several possible meanings or interpretations." The plaintiffs maintain that they were prejudiced by this action.

■ In the instant case, we find that the plaintiffs in this case were not prejudiced by the court's action. The trial court defined a common word and there is no contention that the definition given was incorrect or could have misled the jury. We find no merit to plaintiffs' argument that because the alleged unambiguous promise of Schaller was an element of their promissory estoppel theory, the term "unambiguous" received undue attention and emphasis.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SLATER and HAASE, JJ., concur.